10940

GALLIVAN BUILDING CO. v. S. H. KRESS & CO.

(113 S. E. 342)

CONTRACTS—BUILDING CONTRACT HELD NOT A GUARANTY OF COST LIMIT. —Contract for remodeling building *held* one by contractor to remodel for a fixed compensation of $1,200 at an estimated cost of about $20,000, and not a guaranty by the contractor that the cost should not exceed $20,000; hence the contractor was entitled to his $1,200 compensation, although the cost was in excess of $20,000.

Before MEMMINGER, J., Greenville. Modified.

Action by Gallivan Building Co. against S. H. Kress & Co. Judgment for plaintiff for a reduced amount and both parties appeal.

The contract referred to in the opinion is as follows:

## Building Contract

Made this 4th day of September, 1920, between S. H. Kress & Co., New York corporation hereinafter designated the owner, and Gallivan Building Company, a corporation of the city of Greenville, State of South Carolina, hereinafter designated the contractor.

Contractor agrees to furnish all material, labor, etc., necessary in order to fully and completely rebuild and alter the building located at Greenville, S. C. in strict conformity with the plans and specifications prepared by E. J. T. Hoffman, architect which plans and specifications are a part of this contract, the same as if herein set forth in full.

The contractor agrees to commence the work at once and continue same with all diligence, supplying material promptly, making arrangements where necessary or advisable to buy same as aforesaid immediately, and complete said building without any unnecessary delay.

Contractor further agrees that Mr. Gallivan will give the work his careful personal attention and inasmuch as the purchase of material and the entire handling of the work is to be under his control and direction, the contractor expressly agrees to use particular care in purchasing same material (immediately placing all necessary orders, to secure same at best possible prices and earliest deliveries as needed) consistent with prompt prosecution of the work and proper quality of the material, and the owner relies upon the contractor holding the cost down as low as possible.

Contractor agrees to permit owner to begin and carry on the installation of fixtures, equipment, and stock in said building as soon as reasonably possible, provided same will not substantially interfere with or delay the contractor in completing the work, contractor also agreeing,

so far as reasonably possible, to arrange to carry on his said work and to complete the required portions of the building to permit the installation of such fixtures and merchandise, provided same does not interfere with the prompt completion of the work, and the owner agrees to act reasonably and to co-operate with the contractor in such installation of the fixtures and merchandise, so as not to substantially interfere with the completion of the building, the entire idea being to complete the building and enable the owner to open its store as quickly as possible.

The contractor further agrees to hold the owner harmless from any liens arising out of fault or omission of the contractor.

It is agreed the contractor has estimated the total cost to it of furnishing the material, labor, etc., mentioned in this contract at the sum of about $20,000.00 and that the contractor is entitled to a profit of $1,200.00 upon this contract on the basis of that computation, making a total sum of $21,200.00 approximately. The contractor agrees to complete said building in time for Christmas business.

By full completion of building it is agreed that the building will be completed according to plans and specifications, but contractor will not be held liable for a reasonable small amount of minor items such as touching up painting, etc.

The contractor agrees to keep full and correct records of the costs of all materials, drayage, labor and other expenses incurred by it in connection with the carrying on of this work and that it will furnish the use of its office, necessary stationery, use of its telephone, and the service of its accountants, tools, ropes, tackles, etc., necessary to carry on the work at the building and shops without any remuneration other than as set forth above.

The contractor agrees to carefully check all invoices, pay rolls and bills to the end that it may subsequently

certify, same to the owner to be correct, and the contractor agrees to promptly pay all invoices, pay rolls and bills and all other expenses connected with this work, and to render to the owner about the first of each month, invoices, pay rolls and bills of all materials, drayage, labor and other expenses and accompanied by an affidavit of Mr. Gallivan showing that said bills, invoices, etc., have been properly checked and found correct and have been paid, and also stating that all bills have been paid up to such date. Within a reasonable length of time after the receipt of the owner of such invoices, pay rolls, bills, etc., verified as above provided, the owner agrees to pay over to the contractor the sums of money paid by it on such invoices, pay rolls, and bills plus fee agreed.

*Mr. Wm. G. Sirrine,* for plaintiff-appellant, cites: *Meaning of "about" as used*: 109 S. C. 462; 115 U. S. 188; 114 S. C. 36. *Interest*: 47 S. C. 176; 22 Cyc. 1498; 10 S. C. L. 45; 1 Civ. Code 1912, Sec. 2516; 3 S. C. 175. *Account stated*: 1 R. C. L. 212. *Parol evidence to explain writing*: 61 S. C. 166; 66 S. C. 61; 72 S. C. 217; 72 S. C. 362; 93 S. C. 406.

*Mr. Oscar Hodges,* for defendant-appellant, cites: *Parol evidence inadmissible to explain contract*: 1 Greenl. Evid. Sec. 275; 46 S. C. 411; 117 S. C. 60; 111 S. C. 42; 81 S. C. 183; 69 S. C. 93; 102 S. C. 138. *Meaning of "about"*: 98 S. E. 563; 39 S. E. 471. *Interest*: 100 S. C. 100; 104 S. C. 280.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $3,168.20 balance alleged to be due upon a contract for the remodeling of a certain storeroom in the city of Greenville.

The case turns upon the construction of the contract entered into between the parties on September 4, 1920. In the contract the plaintiff is referred to as the contractor and the defendant as the owner, designations which will be followed herein.

The owner, desiring to remodel his building to a considerable extent, engaged an architect to draw up plans and specifications. He also had the form of a contract prepared, embodying with amplifications the oral agreement which had concluded the preliminary negotiations between the owner and the plaintiff. This form of contract as submitted to the contractor for execution contained in typewriting the following clause:

"It is agreed that the contractor has estimated the total cost to it of furnishing the material, labor, etc., mentioned in this contract at the sum of $20,000 and that the contractor is entitled to a profit of $1,200 upon this contract on the basis of that computation, making a total sum of $21,200."

As a matter of fact these were the figures of the architect. When the contract was thus presented to the contractor the president, J. F. Gallivan, insisted upon the insertion of the word "about" immediately succeeding the figures $20,000, and the word "approximately" immediately succeeding the figures $21,200, and the contract with these words inserted ·in handwriting was duly executed.

The work was then undertaken and completed by the contractor in strict conformity with the plans and specifications, and accepted by the owner without complaint. During the progress of the work the owner paid to the contractor upon bills submitted for material, labor, etc., including the $1,200 compensation, $22,983.96, $1,783.96 in excess of the estimated cost of the work; and at the com-

pletion the contractor presented similar bills amounting to $3,168.20, claiming that the work had cost $24,952.16, exclusive of the $1,200.00 compensation, and making no charge for commissions on the amount of the cost in excess of the estimate, $4,952.16.

The defendant, owner, contended that the contractor had undertaken to do the entire work as called for by the plans and specifications for $21,200.00, including its compensation; that the owner had paid the contractor $22,983.96, $1,783.96 in excess of what it calls the "contract price"; that it owed the contractor nothing; and set up a counterclaim for the alleged overpayment.

The case was tried by Judge Memminger without a jury upon testimony taken in open Court. He filed a "decision and order for judgment," dated October 24, 1921, in which he takes the defendant's view that the contractor had agreed to do the work at a "stipulated price" of "about" $20,000.00, plus the contractor's fee of $1,200.00, total "approximately" $21,200.00. He accordingly held that $2,000.00 additional would reasonably be within the terms "about" and "approximately," and that the contractor would be "entitled" to $23,200.00, plus $120.00 additional fee, total $23,320.00, upon which he had been paid $22,983.96, leaving a balance due the contractor of $337.04 ($336.04?), for which amount he ordered judgment.

From this decree and order for judgment both parties have appealed; the contractor contending that it was entitled to $3,168.20, with interest on $113.86 from February 15, 1921, on $2,510.52 from March 22, 1921, and on $543.82 from May 18, 1921, at 7 per cent.; and the owner contending that it was error to allow so great a sum as $2,000.00 additional in variation of the estimate, and in allowing $120.00 additional fee to the contractor. The defendant did not except to the disallowance of the counterclaim of $1,783.96.

The contention of the defendant and the Circuit decree are based upon an erroneous construction of the contract entered into between the parties; that is that the contract contained an undertaking on the part of the contractor to do the work for an approximate compensation of $21,200.00; in other words, that by his estimate, if it was his estimate, of the approximate cost of the work, he guaranteed that it would not cost more than that amount, which is exactly the undertaking the contractor would have assumed if he had agreed to do the work for a certain sum of money.

By an examination of the contract, which will be reported, it will be found that the following provisions, utterly inconsistent with the idea that the contractor undertook to do the work for a fixed or an approximate compensation, occur:

(1) The contractor should in purchasing the material and supplying the labor assume the duty of "holding the cost down as low as possible." What interest would this have been to the owner, if the contractor had assumed the obligation of completing the work within the estimate?

(2) The contractor should keep full and complete records of the cost of all material, drayage, labor, and other expenses incurred by it in connection with the carrying on of this work. What interest would this have been to the owner if the contractor had assumed the obligation of completing the work within the estimate?

(3) The contractor agrees to carefully check all invoices, pay rolls and bills to the end that it may subsequently certify the same to the owner to be correct, and the contractor agrees to promptly pay all invoices, pay rolls and bills and all other expenses connected with this work, and to render to the owner about the first of each month, invoices, payrolls, and bills of all materials, drayage, labor and other expenses and accompanied by an affidavit of Mr. Gallivan

showing that said bills, invoices, etc., have been properly checked and found correct and have been paid, and also stating that all bills have been paid up to such date. Within a reasonable length of time after the receipt of the owner of such invoices, pay rolls, bills, etc., verified as above provided, the owner agrees to pay over to the contractor the sums of money paid by it on such invoices, pay rolls, and bills, plus fee agreed." The same question may be asked as to this provision.

The contract shows that the owner engaged the contractor to pay for all of the material, supply all the labor, and complete the work "in strict conformity with the plans and specifications prepared" by the owner's architect, "which plans and specifications are a part of this contract, the same as if herein set forth in full"; to supervise the work; to make the cost as low as possible; to keep full records, to certify the bills, invoices, and pay rolls to the owner, who engaged to pay them as presented. There is not a word in the contract casting an obligation upon the contractor to do this work within certain limits, or to personally incur any obligation which the owner would not relieve him of, all for a stated compensation of $1,200.00; there is not a word in it suggesting a guaranty on the part of the contractor. The estimated cost was nothing more than it is termed, an estimate; and as further evidence, if it were needed, that the contractor did not propose to guarantee anything except his compensation, when the contract was presented he insisted upon the insertion of the words "about" and "approximately." There is absolutely nothing to show that the contractor in the slightest particular failed to do the work "in strict conformity with the plans and specifications," or that he failed to purchase material and supply labor at as low a cost as possible. The owner has in the fullest particular obtained what he engaged the

contractor to furnish him; and actually paid without protest or objection more than $1,700.00 of the bills in excess of the estimate. He has but met with the common experience of planning a building which has exceeded his expectations in cost, and now seeks to cast upon the contractor the burden of disappointment, without the slightest evidence of the legal assumption of that burden; all the while retaining the benefit of the increased cost, and showing not the slightest infraction of the contractor's obligation. The contractor duly rendered bills to the owner as alleged in paraagraph 4 of the complaint, to which no objection was made. This constituted accounts stated for which the contractor is entitled to interest as claimed.

The judgment of the Circuit Court is accordingly modified, and the case remanded to that Court, with instructions to render judgment in favor of the plaintiff for $3,168.20, with interest as claimed in Paragraph 4 of the complaint.

Judgment modified in favor of plaintiff.

### On Petition for Rehearing

*Per Curiam.* The amounts paid out by the plaintiffs were paid out in reality for the defendant, under their express contract to reimburse the plaintiffs therefor, within a reasonable time. No objection to the invoices was made by the defendant, who contested liability upon grounds not sustained by this Court. No reason has been suggested why a person who has paid out money at the request of another on claims not contested should not be allowed interest. The petition is dismissed.